# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT BECKLEY

| | |
|---|---|
| RALPH HELVEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:04-0556 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order, this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's "Brief in Support of Complaint and Motion to Remand" and Defendants' Motion for Judgment on the Pleadings.

The Plaintiff, Ralph Helvey (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on April 17, 2002 (protective filing date), alleging disability as of December 17, 2001, due to back problems, inner ear damage, dizziness, blood pressure, depression, arthritis, and slow heartbeat.[1] (Tr. at 85-87, 414-17, 64, 70, 409, 419, 408.) The claims were denied initially and upon

---

[1] Claimant filed prior applications for benefits, as noted by the ALJ. (Tr. at 12.) Claimant's third application for benefits was denied by an ALJ decision dated December 11, 2001, which appears in the record. (Tr. at 55-63.)

reconsideration. (Tr. at 64-67, 70-71, 419-21, 409-11.) On May 21, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 73.) The hearing was held on January 16, 2004, before the Honorable Charles R. Boyer. (Tr. at 27-50.) By decision dated February 19, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-21.) The ALJ's decision became the final decision of the Commissioner on May 27, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 3-5.) On June 4, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e),

416.920(e). By satisfying inquiry four, the claimant establishes a <u>prima facie</u> case of disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant suffered from severe impairments, presumably degenerative disc disease and vertigo, as found in the prior ALJ decision.[2] (Tr. at 14-15.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15.) The ALJ then found that Claimant had a residual functional capacity (RFC) for light and sedentary work which would permit Claimant to stand if needed, did not require intense concentration for extended periods of time, and did not expose the Claimant to unusual hazards where he or others could be placed at risk if he became dizzy. (Tr. at 20.) The ALJ noted that the RFC assessment from the prior ALJ decision "would still adequately accommodate the claimant's impairments and limitations," but that it "represented minimalist

---

[2] ALJ Boyer noted that he generally agreed with the findings of the prior ALJ decision dated December 11, 2001, on Claimant's prior application. (Tr. at 15, 55-63.) ALJ Boyer incorporated much of the prior decision into his own decision.

assessments of the claimant's residual functional capacity." (Tr. at 19.) There was no specific finding as to whether Claimant could return to his past relevant work; however, it can be presumed that he was found unable to do so, as the ALJ proceeded to step five of the sequential analysis. (Tr. at 19-21.) Using the Medical-Vocational Guidelines (the "grids"), specifically Rule 201.21, and the testimony of the Vocational Expert (VE) from the prior administrative hearing, the ALJ concluded that Claimant was not disabled. (Tr. at 20.) The ALJ concluded that there were jobs existing in significant numbers in the regional and national economies which Claimant could perform, including receptionist, information clerk, toll booth attendant, security monitor, ticket taker, and answering machine operator. (Tr. at 20.) On this basis, benefits were denied.[3] (Tr. at 20-21.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

---

[3] Claimant's insured status for purposes of DIB expired on December 31, 2002. To be entitled to disability insurance benefits, a claimant must have enough social security earnings to be insured for disability as described in 20 C.F.R. § 404.130. See 20 C.F.R. § 404.315 (2004). Claimant's insured status expiration date means that he had to establish disability on or prior to this date to be entitled to benefits. Thus, the period relevant to Claimant's eligibility for DIB is from December 12, 2001 (the day after the prior ALJ decision denying benefits on the prior application) and December 31, 2002, the Claimant's date last insured. For purposes of SSI benefits, however, Claimant is not constrained by his date last insured. Thus, the relevant period for purposes of SSI is December 12, 2001 through February 19, 2004 (the date of the current ALJ decision). Claimant does not appear to dispute this finding.

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on December 17, 1954, and was 49 years old at the time of the administrative hearing. (Tr. at 85.) Claimant has a high school education. (Tr. at 30.) In the past, he worked as a truck driver. (Tr. at 31.)

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it below as it relates to Claimant's arguments. As Claimant's arguments concern only mental health issues, however, no physical medical evidence is discussed herein.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to find Claimant's borderline intellectual functioning a severe impairment and in failing to call a Vocational Expert ("VE") to testify at the administrative hearing in light of Claimant's non-exertional impairment. The Commissioner asserts that this argument is without merit. In considering Claimant's arguments, the undersigned determined that the ALJ failed to properly analyze Claimant's alleged mental impairments under the applicable Regulations. As

5

the ALJ's general failure regarding the mental impairment analysis requires remand, the Court does not consider Claimant's more specific arguments.

Analysis

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[4] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of

---

[4] These Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

      the Listings of Impairments.
          (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[5] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the

---

   [5] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

It is clear upon a reading of the decision that the ALJ failed to perform an appropriate analysis of the evidence pertaining to Claimant's mental impairments and document his findings utilizing the special technique discussed above. Accordingly, the ALJ's determination is not supported by substantial evidence and remand is therefore warranted. At the outset, the ALJ did not even discuss whether Claimant had a medically determinable mental impairment. See 20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1) (2004). The Regulations note that a physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508; 416.908 (2004). Further, a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms. See id.

Claimant underwent a consultative psychological evaluation by psychologists Dale Rice and Kimberly Caudell on September 5, 2002. (Tr. at 145-50.) Based upon evaluation and testing,

Claimant was diagnosed with depressive disorder, not otherwise specified ("NOS"); cognitive disorder, NOS; and borderline intellectual functioning. (Tr. at 149.) Claimant reported several daily activities and the examiners found that social functioning was fair; concentration was consistent with intellectual ability; persistence was normal; and pace was normal. (Tr. at 150.)

State agency psychological consultants reviewed the record in March and September of 2002 and assessed Claimant's mental impairments. (Tr. at 151-69.) Dr. Clark and Dr. Smith determined that a residual functional capacity assessment was necessary with regard to Claimant's mental impairments. (Tr. at 151.) Notably, they had the option to check on the form that there were "no medically determinable impairments," but did not do so. (Tr. at 151.) Rather, they assessed Claimant's cognitive disorder NOS and depressive disorder NOS and rated Claimant's degree of limitation in the four broad areas of functioning. They determined that Claimant had no limitations in activities of daily living; no limitation in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation of extended duration. (Tr. at 161.) On a Mental Residual Functional Capacity Assessment Form, the examiners rated Claimant "not significantly limited" in all areas except for the ability to maintain attention and concentration for extended periods, which was rated as "moderately limited." (Tr. at 166-68.)

Although the ALJ noted the consultative psychological evaluation of record and the state agency consultants' opinions, he did not perform the requisite analysis called for in the Regulations. In fact, there is no further discussion of Claimant' mental impairments. The ALJ relies heavily on the prior ALJ decision of December 11, 2001 and thus incorporates the findings from that decision into his own. He therefore found that Claimant had severe impairments but did not specifically state what those impairments were. (Tr. at 15.) Presumably, however, they were the same severe impairments found by the prior ALJ, degenerative disc disease and vertigo. (Tr. at 14.) Notably, mental

9

impairments were not discussed in the prior decision, as the consultative psychological evaluation and state agency assessments were completed after the date of the prior ALJ decision. The ALJ in the instant decision failed to first determine whether there was even a medically determinable mental impairment, which there appeared to be in light of the diagnoses made by Mr. Rice and Ms. Caudell. The ALJ also failed to then rate the degree of functional limitation, if any, resulting from the impairments.

The Commissioner does not address the ALJ's failure to perform the special technique, as this argument was not raised by Claimant. She responds to Claimant's arguments by stating that the record does not show that Claimant's borderline intellectual functioning presented any functional limitations. (Def.'s Br. at 7.) Further, she argues that the "ALJ did not ignore Plaintiff's mental limitations" and expressly accommodated his concentration problems by prohibiting jobs that would require intense concentration for extended periods of time. (Def.'s Br. at 7-8; Tr. at 20.) These assertions do not change the fact that the ALJ failed to perform a proper analysis of Claimant's mental impairments. Although he very well may have reached the same conclusion after utilizing the special technique, he should provide a sufficient analysis and explanation for the findings.

The ALJ must accompany his decision with sufficient explanation to allow a reviewing court to determine whether the Commissioner's decision is supported by substantial evidence. "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557©), to include in the text of [his] decision a statement of the reasons for that decision." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's "decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The ALJ must therefore properly explain the determinations in his decision. The ALJ was required to spell out his findings respecting the functional limitations in determining whether Claimant's mental impairments were severe. Or, if he did not find medically determinable mental impairments, he should state so and explain the reasons for the finding. The undersigned therefore finds that the ALJ's decision is not supported by substantial evidence and this case must be remanded to the Commissioner for full consideration of the evidence pertaining to Claimant's mental impairments in accordance with the prescribed special technique.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings, **DENY** the Defendant's Motion for Judgment on the Pleadings, **REVERSE** the final decision of the Commissioner, **REMAND** this case for a thorough evaluation of Claimant's mental impairments using the special technique set forth in the Regulations and a sufficient explanation for the findings and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph Robert Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

Date: August 22, 2005.

R. Clarke VanDervort
United States Magistrate Judge